IN THE MATTER OF THE ESTATE OF JOHN F. MILLER, Deceased, BLACK HAWK COUNTY, Appellee, v. WILLIAM DORRIS, Executor, Appellant.

Taxation:   NON-RESIDENT DECEDENT:   *Agency.* Money and credits belonging to a citizen of another state, in the hands of an agent in this state, are taxable here after the agency has been
1   revoked by the death of the owner and the property became subject to local administration, until it is transferred by order of court to the administrator appointed in the state where the owner resided.

RESPONSIBILITY OF AGENT:   *Statutes.* Code 1897, section 1320, providing that any person acting as an agent, and having in his possession money, notes or credits belonging to his principal, shall be required to list them, and that on failure to perform
2   such duty the agent renders himself personally liable, has reference to the duty of the agent personally, and does not limit the power of the state to tax such money or credits, to the time during which the agency subsists.

SAME:    *Wrongful appointment of ancillary administrator.*  Where
money and credits belonging to a deceased citizen of another
state were retained in this state by an ancillary administra-
tor, the fact that he was wrongfully appointed did not de-
prive the state of the right to tax the property.

*Same.*  That the property remained in the hands of the local ad-
ministrator longer than necessary because of his wrongful
prolongation of the ancillary administration did not affect the
state's right to tax the property during such prolongation.

*Appeal from Black Hawk District Court.*—HON. A. S.
BLAIR, Judge.

SATURDAY, APRIL 12, 1902.

APPEAL from the allowance of a claim against the estate
of John F. Miller, deceased, for taxes assessed upon moneys
and credits in the year 1895.—*Affirmed.*

*O. C. Miller* and *Hubbard, Dawley & Wheeler* for ap-
pellant.

*S. B. Reed* and *J. E. Williams* for appellee.

WEAVER, J.—The payment of the tax in controversy
is contested by the executor on the ground that John F.
Miller, against whose estate the claim is made, died a resi-
dent of the state of Pennsylvania; that the principal admin-
istration of his estate is in that jurisdiction, and the moneys
and credits in question were, therefore, not taxable in Iowa.
This issue was submitted to the district court upon an agreed
statement of facts, which, in substance, sets forth that
John F. Miller, a resident of Pennsylvania, died
there in August, 1893; that his will was probated in
the county of his late residence, and Wm. Dorris, also a resi-
dent of Pennsylvania, was appointed executor; that in 1872
John F. Miller placed in the hands of W. W. Miller, then
and ever since of Black Hawk county, Iowa, the sum of
$19,000 for investment; that said moneys remained in the

hands of W. W. Miller until the spring of the year 1895, when he paid it, with accumulations, to the said William Dorris, as hereinafter shown; that in November, 1893, W. W. Miller was upon his own application appointed executor of the will of John F. Miller by the district court of Black Hawk county; that in January, 1894, Dorris applied to the district court of Black Hawk county to remove the said W. W. Miller as executor of said will in Iowa, and asking that he himself receive such appointment; that, a demurrer to such application being sustained, Dorris appealed to this court, where the judgment of the court below was reversed; that, the cause being remanded and tried in the district court, judgment was rendered March 14, 1895, removing said W. W. Miller as executor, and appointing Dorris in his stead; that upon the qualification of Dorris under said appointment W. W. Miller turned over to him moneys and credits of the estate of John F. Miller to the amount of nearly $40,000; that on January 1, 1895, and while he still had the moneys and credits in his possession as executor, W. W. Miller listed them with the assessor of the precinct in which he resided for taxation; that the taxes levied upon such assessment amount to the principal sum of $367, with the statutory interest or penalty thereon, and the same is unpaid. Upon these facts the district court allowed the claim of the county as filed, and ordered the executor to pay the same. From this judgment the executor appeals.

Counsel for appellant, concedes that the money, having been sent to an agent in this state for investment, was taxable here during the lifetime of John F. Miller, but claims that upon his death and the appointment of the executor in Pennsylvania the funds ceased to be held for investment in this state, and ceased to be taxable except in the state of the residence of the testator. It is further urged that, but for the act of W. W. Miller in procuring the appointment as executor in this state, the ancillary administration would

have been closed, and the moneys and credits transferred to Pennsylvania, before January 1, 1895, and that for the purposes of taxation such transfer should be deemed to have been made at the date it would have been effected but for such wrongful interference.

I. Does the fact of the death of John F. Miller, and the resulting termination of the agency, have any effect upon the right of the state to tax the funds in his hands? We are unable to see upon what principle it can be said that moneys and credits cease to be taxable under such circumstances. It is true that by the death of John F. Miller the agency of W. W. Miller terminated, and he thereafter held the property subject to the demand of the duly appointed executor. The mere fact that the principal administration was in a foreign state could have no effect to take away from this state its taxing power over property left within its jurisdiction. Appellant says, however, that moneys and credits of a non-resident are not taxable under the laws of Iowa, except when held by an agent in whose hands they have been placed for investment; and that upon the death of John F. Miller, and the termination of the agency of W. W. Miller, the funds in the hands of the latter were no longer held for investment, and therefore ceased to be taxable here. Code 1873, section 817, and Code 1897, section 1320, are cited in support of this contention. This section provides that "any person acting as agent of another and having in his possession any money, notes and credits belonging to such other person with a view to investing or loaning or in any other manner using or holding the same for pecuniary profit, shall be required to list the same," and that upon failure to perform such duty the agent renders himself personally liable. It will readily be seen that this provision has special reference to the duty of the agent, and does not in any manner attempt to define the limits of the taxing power. We are not pre-

pared to hold that moneys and credits of non-residents, which are actually being kept or held in this state for purposes other than investment, are, under no circumstances, subject to taxation here. The facts in this case, however, do not require any discussion of the general question thus suggested. The funds upon which this particular tax was levied were admittedly sent to this state for investment, and were so being held by the agent at the death of the owner. They had been kept here for a period of over twenty years, earning large profits. During all that time they had enjoyed the protection of the law of Iowa, and, even upon appellant's theory, were taxable until the death of John F. Miller. While the agency of W. W. Miller then ceased, the property remained here subject to local administration, demanding the attention and protection of the courts; and, in our judgment, until such administration was complete, and the proper order entered for the transfer of the funds to the non-resident executor, the right of taxation in this state continued. The fact, if it be a fact, that the appointment of W. W. Miller as executor was an error, is entirely immaterial to the consideration of the question before us. Until that appointment was revoked, he was the legal custodian of the assets of the estate within this jurisdiction, and for the time being the legal title was also in him. It was his duty to list it for taxation, and it is likewise the duty of his successor in the ancillary administration to pay the tax. Code 1873, section 803; Code 1897, section 1312; *Dorris v. Miller,* 105 Iowa, 570. This conclusion in no manner conflicts with *Barber v. Farr,* 54 Iowa, 57, and other cases, to the effect that the *situs* of moneys and credits for taxing purposes is the residence of the owner. The cases referred to have generally arisen over conflicts of jurisdiction between different counties of the state, and in principle are not controlling of the case at bar. But, even if we take these authorities as our guide, we reach the same result, for, as we have seen, at the time the property was assesssed it

was not only in Black Hawk county, where it had been for many years, but its legal title and custody were held by a resident of that county. It is perhaps worth while to note also that there is nothing in the agreed statement of facts to show that the beneficiaries of the will of John F. Miller, or some of them, who were entitled to receive his moneys and credits when distributed, were not residents of Iowa; nor is it shown that the moneys and credits here taxed were not necessarily employed in the ancillary administration in paying claims and legacies due to residents of this state, as provided by statute. Code 1897, section 3306.

II. The fact that the local or ancillary administration was delayed or prolonged by the acts of W. W. Miller we do not consider material. The state cannot be expected to go into the settlement of such disputes before assessing property for taxation. If, for instance, the non-resident owner of a herd of cattle or stock of merchandise in Iowa undertakes to ship it out of the state, but is delayed by groundless and vexatious litigation, and during such delay a claim for taxes accrues, which would have been avoided had he not been hindered in the removal, we know of no authority which would justify the court in declaring such a tax invalid. Nor is the reason for applying such rule to moneys and credits any more persuasive. To entertain such objection is to open the door to endless litigation over remote causes and collateral issues to the manifest detriment of the public revenues.

The judgment of the district court is AFFIRMED.